IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNIE FLOURNOY, #B61265, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>DEE DEE BROOKHART, )<br>LAURA CUNNINGHAM, )<br>MS. ELLIOTT, and )<br>WEXFORD HEALTH SOURCES, INC., )<br>)<br>Defendants. ) | Case No. 3:22-cv-00049-MAB |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Johnnie Flournoy, an inmate in the custody of the Illinois Department of Corrections, filed *Flournoy v. Brookhart, et al.*, Case No. 3:20-cv-01357-SPM (S.D. Ill.), pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights at Lawrence Correctional Center. Upon preliminary review of the First Amended Complaint under 28 U.S.C. § 1915A, the following claims were severed into this case:

- Count 6: Eighth Amendment claim against Brookhart, Elliott, and Cunningham for failing to implement proper COVID-19 safety protocols.

- Count 7: Eighth Amendment claim against Brookhart, Cunningham, and Wexford for failing to provide medical treatment to Plaintiff once he contracted COVID-19.

- Count 8: Fourteenth Amendment equal protection claim against Elliott, Brookhart, and Cunningham.

- Count 9: First Amendment claim against Elliott for moving Plaintiff to different cells in retaliation for filing grievances and complaints.

(Doc. 1). This matter is now before the Court for preliminary review of these severed claims under § 1915A.[1] Any claim that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## FIRST AMENDED COMPLAINT

Plaintiff makes the following allegations relating to the severed claims (Doc. 2): Dr. Pittman was the only doctor at Lawrence that tried to help the inmates with their medical problems. Warden Brookhart and Cunningham "didn't like it and did things to thwart all her good efforts." (*Id.*, p. 7). Prior to Dr. Pittman leaving employment at Lawrence, she warned inmates about COVID-19. The "white racial staff [] in the Health Care Unit" ran her off and "the virus hit [Lawrence inmates] hard with no real precaution nor prevent[ion] taken." (*Id.*).

Plaintiff and other inmates submitted emergency grievances to Warden Brookhart about the "running of chow lines with hundreds of inmates in the chow hall, yard line, gym lines and even school program lines" based on what they heard on the news of "what not to do because of covid." (*Id.*). Warden Brookhart denied the emergency grievances. During the pandemic, Placement Officer Supervisor Elliott recklessly started moving inmates housed on both the South and North side of the prison daily as if "she was deliberately trying to effect every inmate in the Prison." (*Id.*). Warden Brookhart and

---

[1] The Court has jurisdiction to screen the Complaint in light of Flournoy's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

Cunningham were aware of Elliott's actions and numerous inmate complaints over it, but they did nothing to stop it and signed off on her conduct once a grievance was filed.

Plaintiff was housed in the ADA medical wing in a single cell because of his vision impairment. Cunningham "watched over" the ADA medical wing "for a while." (*Id.*). Elliott began moving Plaintiff from one cell to another without reason without any security reason. (*Id.*, p. 8). Elliott tried to move Plaintiff to a cell with another inmate who did not wear a mask and who also had a bottom bunk permit. Elliott tried to put Plaintiff on the top bunk, but "the block Sergeant didn't go for that." (*Id.*). An hour later, Elliott, who was angry, moved Plaintiff to another cell with a younger inmate who also did not believe in wearing a mask. Plaintiff believes that his multiple cell transfers were done in retaliation for filing grievances and complaints.

In November 2020, Warden Brookhart came to Plaintiff's housing unit. He complained to her and she responded, "no we're not playing musical chairs." (*Id.*). An inmate worker who served food to the inmates in that unit and was in the neighboring cell, Papa Moe, told Brookhart that he was sick. Brookhart directed the officer to take him to the health care unit and further instructed the officer that if Papa Moe was not sick, then to write him a ticket. Papa Moe died two days later from COVID-19. Papa Moe's cellmate also tested positive for COVID-19. Next, Plaintiff's cellmate became ill, and then he too became sick with COVID-19. Plaintiff states that even though the staff was taking inmate temperatures, they were trying to cover up what they knew was going on in the facility. Plaintiff filed a complaint and requested an investigation with the Governor and the United States Department of Justice ("DOJ").

After testing positive for COVID-19, Plaintiff was moved to 6 House with the other inmates who tested positive. (*Id.*, p. 9). He was placed in a "handicap cell" by himself. He did not receive any medical treatment because Brookhart, Cunningham, and Wexford were enforcing Wexford's "cost cutting policy." Plaintiff was released after fourteen days and placed in 3 House. He remained sick for several more days. He filed another complaint with the Governor and the DOJ.

Based on the allegations in the First Amended Complaint, the Court renumbers the severed claims in this *pro se* action, as follows:[2]

Count 1: Eighth Amendment claim against Brookhart, Elliott, and Cunningham for failing to implement proper COVID-19 safety protocols.

Count 2: Eighth Amendment claim against Brookhart, Cunningham, and Wexford for failing to provide medical treatment to Plaintiff once he contracted COVID-19.

Count 3: Fourteenth Amendment equal protection claim against Elliott, Brookhart, and Cunningham.

Count 4: First Amendment claim against Elliott for moving Plaintiff to different cells in retaliation for filing grievances and complaints.

## DISCUSSION

The allegations in the First Amended Complaint are sufficient for Count 1 to proceed against Brookhart, Elliott, and Cunningham; Count 2 to proceed against

---

[2]Any claim that is mentioned in the First Amended Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

4

Brookhart, Cunningham, and Wexford; and Count 4 to proceed against Elliott.

Count 3, which is based on the same facts as the Eighth Amendment claims in Counts 1 and 2, fails to state an equal protection claim under the Fourteenth Amendment. The fundamental component of an equal protection claim is that an individual was treated differently from others similarly situated. Plaintiff does not make such an allegation. Rather, he alleges Elliott was moving inmates housed on both the South and North side of the prison daily and that Brookhart and Cunningham knew and failed to stop it. As such, Count 3 will be dismissed.

## DISPOSITION

**IT IS HEREBY ORDERED** that the following claims survive screening under 28 U.S.C. § 1915A: **COUNT 1** against **BROOKHART, ELLIOTT,** and **CUNNINGHAM**; **COUNT 2** against **BROOKHART, CUNNINGHAM,** and **WEXFORD HEALTH SOURCES, INC.**; and **COUNT 4** against **ELLIOTT**. **COUNT 3** is **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants **BROOKHART, ELLIOTT, CUNNINGHAM,** and **WEXFORD HEALTH SOURCE, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Memorandum and Order Severing Case (Doc. 1), a copy of the First Amended Complaint (Doc. 2), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take

appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint (Doc. 2) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: January 25, 2023**

>     /s/ Mark A. Beatty
>     **MARK A. BEATTY**
>     **United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, Defendants will enter an appearance and file Answers to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.